UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAB MUFFLER CORP.,                                                    06-CV-0043E(Sc)

                    Plaintiff,

                                                                                    MEMORANDUM

          -vs-
                                                                                    and

LONDON TAXIS NORTH AMERICA INC.,
LTNA MERGER CORP. and                                        ORDER[1]
LONDON TAXIS NORTH AMERICA HOLDING INC.,

                    Defendants.

_____

## INTRODUCTION

          Plaintiff PAB Muffler Corp. ("PAB") filed this action alleging that it had

purchased shares of stock from defendants London Taxis North America, Inc.,

LTNA Merger Corp., and London Taxis North America Holding, Inc., (together

"London Taxis") by issuing a Subscriber Agreement and paying the $100,000

purchase price for the stock.  PAB further alleges that, despite its obligation to do

so, London Taxis failed to issue stock to it and instead issued stock certificates

in the name of Jeffrey Gellman, PAB's President.  PAB asserts that when London

Taxis failed to issue stock to it, PAB unilaterally rescinded the Subscription

Agreement and now seeks the return of the $100,000 purchase price.

_____

          [1]This decision may be cited in whole or in any part.

Pending before the Court is London Taxis' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCvP"). PAB opposes the Motion and, by its opposition only, purports to seek judgment on the pleadings pursuant to the Federal Rules of Civil Procedure("FRCvP") 12(c) or summary judgment pursuant to FRCvP 56. As PAB has not filed *motions*[2] seeking such relief, the Court will not consider its positions in support of such purported motions but only in opposition to London Taxis' Motion to Dismiss. This dispute is controlled by Massachusetts law, which governs the Subscription Agreement.

<u>DISCUSSION</u>

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the FRCvP, the Court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps* v. *Kapnolas*, 308 F.3d 180 (2d Cir. 2002). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "While a complaint attacked by a [FRCvP] 12(b)(6 ) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

---

[2]PAB's Memorandum of Law in Opposition to Defendant's Motion to Dismiss makes a vague and general reference to "cross relief," but does not state the FRCvP on which it relies nor did PAB make an actual motion for cross relief. PAB failed to file a proper Statement of Material Facts Not in Dispute pursuant to Local Civil Rule 56.1, or an attorney affidavit or the affidavit of any person with personal knowledge of the facts. PAB filed no Notice of Motion with respect to either of its purported motions.

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.* v. *Twombly*, – U.S. – , 127 S. Ct. 1955, 1964-65 (2007) (internal citation and quotation omitted).  Accordingly, the Court is not concerned with whether plaintiff may ultimately succeed on his claims but must "assess the legal feasibility of the complaint." *Cooper* v. *Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

With certain limited exceptions, the record on a motion to dismiss is limited to the complaint itself. *See Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  One such exception is that the Court may consider, on a motion to dismiss, items attached to the complaint, incorporated therein by reference, or which were relied upon in the drafting of the complaint. *See e.g.*, *Cortec Indus., Inc.* v. *Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

PAB alleges that it entered into a Subscription Agreement with London Taxis on July 6, 2004.  The Subscription Agreement, while not attached to the Complaint, is incorporated into the Complaint by reference and the Court may consider its contents on this Motion.  By that Agreement, PAB agreed to purchase 2,356 shares of Series A Preferred Stock of London Taxis North America, Inc., in exchange for a purchase price of $100,000.  PAB tendered the purchase price to London Taxis on or about July 14, 2004.  London Taxis North America, Inc., issued stock certificates representing the sold shares on November 15, 2004.  The certificates were issued in the name of Jeffrey Gellman, PAB's President.

- 3 -

Thereafter, due to a merger, the 2,356 shares of London Taxis North America, Inc. were cancelled and were reissued as 2,356 shares of Series A Preferred Stock of London Taxis North America Holding Company, Inc. on February 18, 2005. London Taxis reissued certificates representing the new shares and, again, such were issued in the name of PAB's President, Jeffrey Gellman.

London Taxis seeks to dismiss the Complaint on a number of grounds. London Taxis contends that the Complaint fails to adequately allege a cause of action for breach of contract because it fails to identify the specific provision of the Subscription Agreement allegedly breached and fails to specify the manner in which such provision was breached.

The Complaint alleges that PAB entered into an agreement to purchase stock, that it tendered the purchase price as required and that London Taxis failed to issue stock to PAB. Such allegations sufficiently comprise a "short and plain statement of the claim" as required by FRCvP 8. *See Greater New York Auto Dealers Ass'n* v. *Environmental Systems Testing, Inc.*, 211 F.R.D. 71, 77 (E.D.N.Y. 2002); *see also Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996) ("[w]hile a prudent plaintiff complaining of a breach of contract should allege what representations or warranties were breached, it is not clear that notice pleading requires such specificity).

As a threshold matter, this Court will address PAB's contention that this dispute is governed by the Uniform Commercial Code ("U.C.C.") as incorporated

by Massachusetts General Law Chapter 106.  PAB argues that the London Taxis stock is considered "goods" within the U.C.C. and that London Taxis' failure to deliver the stock certificates in the name of PAB entitles PAB to rescind the agreement pursuant to U.C.C. §2-711.

The U.C.C., however, makes clear that the stocks at issue in the present case fall outside of its coverage.  Article 8 of the U.C.C. applies only to a security which is publicly traded or expressly provides that it is governed by the U.C.C. U.C.C. §8-102(a)(15)(iii); M.G.L. 106 §8-102(a)(15)(iii).  The stocks at issue here are not publicly traded and do not expressly provide for U.C.C. control.  In addition, contrary to PAB's repeated contentions, the stocks do not fall within Article 2 of the U.C.C., which  defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale *other than . . . investment securities*."  U.C.C. §2-105(1) (emphasis added); M.G.L. 106 §2-105(1).  The Official Comments to both the U.C.C. and Massachusetts Code also make clear that investment securities are "expressly excluded" from the definition of goods.  *Id.*

PAB's argument that Article 2 of the U.C.C. is the controlling law is premised on a New York District Court opinion, *Bache & Co., Inc.* v. *Int'l Controls Corp.*, 339 F.Supp. 341 (S.D.N.Y. 1972), which does not apply to the present case. In *Bache*, the court noted that "New York courts in determining to apply Article 2 to the sale of securities as well as goods are following the long-established rule

which applied the former Sales of Goods Act (New York Personal Property Law, Article 5, which was replaced by Article 2 of the New York U.C.C.) to the sale of securities." *Id.* at 349.  The Official Comment to New York's U.C.C. provision also makes clear that, while New York's Article 2 provision generally excludes securities from its coverage, courts may nonetheless apply Article 2 by analogy to securities "when the reason of that section makes such application sensible and the situation involved is not covered by the Article of this Act dealing specifically with such securities." N.Y.U.C.C. §2-105.  However, even assuming, *arguendo*, that New York courts would apply Article 2 to the present dispute, Massachusetts does not follow this line of reasoning and, therefore, neither will this Court.

London Taxis asserts that under Massachusetts law PAB's ownership of the shares became effective upon the execution of the Subscription Agreement and payment of the purchase price.  London Taxis argues that it was not required to issue stock certificates and its error in issuing certificates in the name of Jeffrey Gellman does not divest PAB of its ownership.  PAB argues, in opposition, that the Subscription Agreement states that the "Units" are to be issued in PAB's name and the fact that certificates were issued in Gellman's name indicates that no "stock" was issued to PAB in breach of the Subscription Agreement.

London Taxis is correct that Massachusetts law does not require the issuance of stock certificates in a subscriber's name to make a subscriber a

shareholder. *See Samia* v. *Cent. Oil. Co. of Worcester*, 158 N.E.2d 469, 475 (Mass. 1959) ("Issuing a stock certificate is, of course, not necessary to make a subscriber or other person a shareholder."); *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 89 N.E. 193, 198 (Mass. 1909) (holding stock subscribers were considered shareholders despite the issuing corporation having wrongfully issued the stock certificates to its own treasurer); Wood v. Roy Lapidus, Inc., 413 N.E.2d 345, 348 (Mass. App. Ct. 1980)("It was of no consequence that the corporation never issued and delivered to [plaintiff] any stock certificates."); *Garvey v. Lemle*, 2005 WL 2009552, at *8 (Mass. Super. July 29, 2005).   Contrary to PAB's contentions, London Taxis' failure to properly issue the stock certificates is not determinative as to whether a binding contractual arrangement between PAB and London Taxis had been consummated.   *See Bonsall* v. *Comm'r of Internal Revenue*, 317 F.2d 61, 63 (2d Cir. 1963). In *Bonsall*, the Second Circuit explained that "[t]he certificate is merely evidence of ownership, which is an independently existing fact to be determined by inquiry into the nature of the transaction as a whole." *Ibid*. (*citing Richardson* v. *Shaw*, 209 U.S. 365 (1908)). In the present case, PAB entered into a signed and written subscription agreement, paid for the shares with PAB funds and had notice that the stock certificate was erroneously issued to its President.   Looking into the transaction as a whole makes it clear that PAB became a shareholder of London Taxis despite the administrative error.

- 7 -

PAB overstates the significance of London Taxis' failure to properly issue the stock certificates. "Stock certificates are not the property at issue but are only symbols representing ownership of the underlying shares of stock." *Lucas* v. *Lucas*, 946 F.2d 1318, 1323 (8th Cir. 1991) (citing *Richardson* v. *Shaw*, 209 U.S. 365, 378 (1908)); *Muslef* v. *Georgeff*, 233 F. Supp. 2d 727, 732 (D. Md. 2002). Thus, London Taxis' error does not deprive PAB of shareholder status, but rather merely deprives PAB of a conventional symbol of shareholder status.

Nonetheless, PAB's subscription agreement with London Taxis clearly states that the "Name to appear on Units" is "PAB Muffler Corp." and not "Jeffrey Gellman." Thus, accepting as true that PAB was not issued a certificate in its corporate name, this Court finds that PAB has raised sufficient facts to support a claim for relief. If proven, the facts are sufficient for the plaintiff to establish a breach of contract that would entitle PAB to have the stock certificates issued in its corporate name.

In its Memorandum of Law in Support of Defendant's Motion to Dismiss, London Taxis requests that this Court enter a declaratory judgment permitting it to issue a new stock certificate in the name of "PAB Muffler Corp." and to cancel the current certificate in the name of "Jeffrey Gellman." This Court will not issue such order at this time because the order would affect the rights of a non-party, Jeffrey Gellman, and could subject London Taxis to inconsistent obligations.

While Jeffrey Gellman is both the sole owner and President of PAB, Gellman and PAB are recognized as separate legal entities and will be treated by this Court as such. *See Cedric Kushner Promotions, Ltd.* v. *King*, 533 U.S. 158, 163 (2001).

London Taxis also requests in the alternative that this Court join Jeffrey Gellman to the case as a necessary and indispensable party under FRCvP 19(a) and 21. FRCvP 19(a) provides:

> "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party."

Gellman may claim " an interest relating to the subject of the action" and in his "absence complete relief cannot be accorded among" the existing parties. In addition, if this Court ordered London Taxis to issue new stock certificates in the name of PAB, Jeffrey Gellman could pursue separate legal remedies so as to subject London Taxis to inconsistent judgments. Under FRCvP 21, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Thus, to

achieve finality in this case on terms that are just, this Court orders the joinder of Jeffrey Gellman pursuant to FRCvP 21.

The Court has considered Defendant's other arguments and finds them to be unavailing.

Accordingly, it is hereby **ORDERED** that London Taxis' motion to dismiss is denied and Jeffrey Gellman be joined pursuant to FRCvP 19(a) and 21.

DATED:       Buffalo, N.Y.

             September 6, 2007


                                    _____/s/ John T. Elfvin_____
                                    JOHN T. ELFVIN
                                    S.U.S.D.J.